# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Criminal Action No. 15-cr-00067-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    THADDEUS CHEYENNE MURPHY,

    Defendant.

## PLEA AGREEMENT

The United States of America (the government), by and through Gregory A. Holloway, Assistant United States Attorney for the District of Colorado, and the defendant, Thaddeus Cheyenne Murphy, personally and by counsel, Timothy O'Hara, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1.

### I. AGREEMENT

The defendant agrees to plead guilty to Counts 1 and 2 of the Indictment, charging a violation of 18 U.S.C. § 844(i), Damage of a building used in interstate commerce by means of fire and explosive; and 18 U.S.C. § 922(g)(1), Felon in possession of a firearm.

This agreement is pursuant to Fed. R. Crim. P. 11(c)(1)(A). The government agrees that a three-point reduction in the offense level for acceptance of responsibility is appropriate pursuant to United States Sentencing Commission, Guidelines Manual, § 3E1.1(a). As part of this disposition, the government further agrees not to charge the defendant in United States District Court for the District of Colorado with any additional criminal activity currently known

1

to the government provided the defendant fulfills the terms of the plea agreement as described below.

The defendant is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. Understanding this and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following criteria: (1) the sentence imposed is above the maximum penalty provided in the statutes of conviction, (2) the Court, after determining the otherwise applicable sentencing guideline range, either departs or varies upwardly, or (3) the Court determines that the total offense level is higher than 21 or imposes a sentence above the mandatory minimum sentence of 60 months. Except as provided above, the defendant also knowingly and voluntarily waives the right to appeal the manner in which the sentence is determined on grounds set forth in 18 U.S.C. § 3742.

The defendant also knowingly and voluntarily waives his right to challenge this prosecution, conviction, or sentence and/or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255. This waiver provision, however, will not prevent the defendant from seeking relief otherwise available if: (1) there is an explicitly retroactive change in the applicable guidelines or sentencing statute, (2) there is a claim that the defendant was denied the effective assistance of counsel, or (3) there is a claim of prosecutorial misconduct. Additionally, if the government appeals the sentence imposed by the Court, the defendant is released from this waiver provision.

## II. ELEMENTS OF THE OFFENSES

The parties agree that the elements of the offenses to which this plea is being tendered are as follows:

**Count 1:**

To establish a violation of Count 1, damage of a building used in interstate commerce by means of fire and explosive, the government must prove the following beyond a reasonable doubt:

*First:* the defendant did maliciously damage and destroy, or did attempt to damage and destroy a building and other real and personal property, by means of fire or explosive;

*Second:* the building and other real and personal property the defendant damaged and destroyed or attempted to damage and destroy were items used in interstate commerce.

**Count 2:**

To establish a violation of Count 2, felon in possession of a firearm, the government must prove the following beyond a reasonable doubt:

*First:* the defendant knowingly possessed a firearm or ammunition;

*Second:* the defendant was convicted of a felony, that is, a crime punishable by imprisonment for a term exceeding one year, before he possessed the firearm or ammunition; and

*Third:* before the defendant possessed the firearm or ammunition, the firearm or ammunition had moved at some time from one state to another.

*Tenth Circuit Pattern Instruction 2.44 (2011).*

## III. STATUTORY PENALTIES

The maximum statutory penalty for a violation of 18 U.S.C. § 844(i) is: not more than 240 months imprisonment; not more than $250,000 fine, or both; not more than 5 years supervised release; $ 100 special assessment fee; plus restitution. The minimum statutory penalty is 60 months imprisonment.

The maximum statutory penalty for a violation of 18 U.S.C. § 922(g) is: not more than 120 months imprisonment; not more than $250,000 fine, or both; not more than 3 years supervised release; $ 100 special assessment fee.

The Court will impose a separate sentence on each count of conviction and may, to the extent permitted by law, impose such sentences either concurrently with or consecutively to each other.

If probation or supervised release is imposed, a violation of any condition of probation or supervised release may result in a separate prison sentence and additional supervision.

## IV. COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury.

## V. STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty pleas that the defendant will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offenses of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. §3553, additional facts may be included below which are pertinent to those considerations and

4

computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. §3553 factors, or to the Court's overall sentencing decision.

The parties agree that the date on which relevant conduct began is December of 2014.

The parties agree as follows:

On January 6, 2015, the Colorado Springs Police Department ("CSPD") received a 911 call about an explosion that occurred at 603 S. El Paso Street in Colorado Springs, Colorado at approximately 10:48 a.m. The caller, Gene Sutherland, said someone tried to blow up the building by putting stick of dynamite next to a container of gasoline and lighting it. Sutherland explained he, along with others, heard a huge explosion inside the building. When Sutherland went outside, he saw the gas can still sitting next to the building where the explosion happened.

The explosion occurred at the northeast (back) corner of the building at 603 S. El Paso Street. The building houses two businesses, including Mr. G's Hair Design Studios (owned by Mr. Sutherland) and the Colorado Springs Chapter of the National Association for the Advancement of Colored People ("NAACP"). The business closest to the explosion was Mr. G's Hair Design Studios. The NAACP was on the south side of the building opposite the blast site. Both businesses receive materials and supplies from outside the state of Colorado, thus affecting interstate commerce. Also on the building was a sign that read "Income Tax", but that

5

business had not been active for some time.

Investigators arrived and examined the scene of the blast. The building had charring on its side and a concrete wall about six feet away had also been damaged. The resultant damage was minimal. At the blast site itself, investigators found a piece of metal pipe as well as a piece of a road flare and the gas can. The gas can, which was about ¾ full, failed to ignite. In examining the debris field from the blast, investigators recovered two galvanized end caps for metal pipe and shredded duct tape. Analysis of the material recovered from the scene showed that the device used to cause the explosion and fire at the building was an improvised explosive device ("IED") commonly known as a pipe bomb. Additionally, forensic analysis of the duct tape recovered discovered brown dog hair on the tape from the blast field.

Witnesses told investigators from the FBI-JTTF the person who placed the bomb was a white male, in his 30s or 40s, either bald or close shaved hair with a medium to heavy build. Witnesses also described the suspect vehicle as a white truck with a black or dark colored hood. They said the tailgate of the truck was up before the blast, but was left down after the blast driving away from the scene. Through investigation, FBI-JTTF agents found surveillance video from a residence in a neighborhood near 603 S. El Paso Street. The video showed a distinctive white Ford truck with a black hood driving toward the location with its tailgate up shortly before the blast; and, the same distinctive truck driving away from the location with its tailgate down right after the blast.

A CSPD detective familiar with the investigation found a truck matching the description, and investigators found that it matched the truck from the surveillance video. Investigators observed the truck parked at the defendant's residence, and found that the truck was registered to

the defendant. In reviewing the defendant's driver's license photo, investigators also found the defendant matched the description of the suspect given by the witnesses. A records check of the defendant's criminal history showed that he had previously been convicted of two felony thefts, crimes punishable by a term exceeding one year. The defendant's parole officer for his felony theft convictions told investigators that she had seen a brown dog at the defendant's residence. At a recent CSPD welfare check at the defendant's residence, responding officers also noted the presence of a dog or dogs.

FBI-JTTF investigators were able to determine the defendant's cell phone number; and, obtained a court order for his cell phone records before and during the blast. The defendant's cell phone records indicated that his cell phone was using the cellular towers heading toward the 603 S. El Paso Street location right before the blast and away from the location right after the blast. Analysis of the cell phone records also showed the only other time the defendant's cell phone used towers in the area of 603 S. El Paso Street was on December 30, 2014.     Agents from the FBI-JTTF obtained a search warrant for the defendant's truck and residence. When they executed the warrant, agents found seven (7) firearms inside the residence, including two assault rifles, a handgun, two shotguns, and a WWII era Russian made battle rifle. A homemade silencer was found with the firearms as well. Further analysis of the firearms recovered by ATF show that none of them were manufactured within the state of Colorado, thus have had to travel in interstate commerce.

Investigators also found components left over from the defendant's IED, including the remaining road flares, galvanize pipe, "Dragon's Breath" shotgun shells, and duct tape. Two dogs were at the residence, one of them had brown hair consistent with that recovered from the

7

duct tape at the blast scene.

Agents from the FBI-JTTF and ATF interviewed the defendant. After being fully advised of his Miranda rights, the defendant waived them and agreed to make a statement. The defendant admitted that he made the pipe bomb in his garage out of galvanized pipe and a "Dragon's Breath" shotgun shell. He explained that he placed the pipe bomb, along with a gas can, on the back side of the building at 603 S. El Paso Street and lit the bomb fuse with a road flare. The defendant told investigators that he placed the bomb in an effort to get back at his former accountant who had failed to return the defendant's calls. The defendant admitted that he knew he was not allowed to possess firearms because he was a convicted felon.

## VI. ADVISORY GUIDELINE COMPUTATION AND 3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. §3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. However, the government is not bound by this estimated guideline calculation. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

    A.    The base guideline for Count 1 is § 2K1.4(a)(1)(B), with a base offense level of 24. The base guideline for Count 2 is § 2K2.1(a)(4)(B)(I), with a base offense level of 20.

    B.    For Count 2, the specific offense characteristic of possession of 3-7 firearms applies, adding 2 levels. § 2K2.1(b)(1)(A).

8

For Count 2, the government believes that the specific offense characteristic of possession of a destructive device applies, adding 2 levels. § 2K2.1(b)(3)(B). The defendant objects to application of this specific offense characteristic.

For Count 2, both parties believe the specific offense characteristic of possession in connection with another felony under § 2K2.1(b)(6) does not apply.

C. There are no victim or obstruction related adjustments; and, both parties believe that the enhancements under U.S.S.G. §§ 3A1.1 (Hate Crime Motivation or Vulnerable Victim) and 3A1.4 (Terrorism) do not apply. The multiple count adjustments do not apply because Count 1 carries a statutory mandatory minimum of 60 months. *See* § 5G1.2.

D. For Count 1, the adjusted offense level would be 24. For Count 2 the adjusted offense level would be 24 under the government's calculation. Under the defendant's calculation, the adjusted offense level for Count 2 would be 22.

E. The defendant should receive the full 3 point adjustment for acceptance of responsibility pursuant to § 3E1.1. For Count 1, the resulting offense level therefore would be 21. For Count 2, the resulting offense level under the government's calculation would also be 21. For Count 2, the resulting offense level under the defendant's calculation would be 19.

F. The parties understand that the defendant's criminal history computation is tentative. The criminal history category is determined by the Court based on the defendant's prior convictions. Based on information currently available to the parties, it is estimated that the defendant's criminal history category would be III.[1]

1) El Paso County Case #07CR3529, Felony Theft - $500-$15,000. 3 points, § 4A1.2(a)

---

[1] The defendant believes that the CHC calculation results in a category II.

9

2) El Paso County Case #07CR635, Felony Theft - $500-$15,000. 3 points, § 4A1.2(a)

G. The career offender/criminal livelihood/armed career criminal adjustments do not apply.

H. The advisory guideline range resulting from the government's calculation for both Counts is 46 to 57 months. Under the defendant's calculation, the resulting advisory guideline range would be 46 to 57 months for Count 1; and, 37 to 46 months for Count 2.[2] However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level(s) estimated above could conceivably result in a range from 37 months (bottom of Category I) to 96 months (top of Category VI). The guideline range would not exceed, in any case, the cumulative statutory maximums applicable to the counts of conviction. However, Count 1 carries a mandatory minimum 60 month sentence.

I. Pursuant to guideline § 5E1.2, assuming the estimated offense level above, the fine range for this offense would be $ 7,500 to $ 750,000, plus applicable interest and penalties.

J. Pursuant to guideline § 5D1.2, if the Court imposes a term of supervised release, that term is not more than 5 years.

K. Restitution to the owner of 603 S. El Paso Street to be determined as required by guideline § 5E1.1.

The parties understand that although the Court will consider the parties' estimate, the Court must make its own determination of the guideline range. In doing so, the Court is not bound by the position of any party.

---

[2] Additionally if the CHC is a category II as the defendant believes, the resulting ranges would be 41 – 51 months for Count 1 and 33 – 41 months for Count 2. However, Count 1 still carries a mandatory minimum sentence of 60 months.

No estimate by the parties regarding the guideline range precludes either party from asking the Court, within the overall context of the guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the parties regarding the guideline range precludes either party from asking the Court to vary entirely from the advisory guidelines and to impose a non-guideline sentence based on other 18 U.S.C. §3553 factors.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. §3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. §3553 factor.

## VII. ENTIRE AGREEMENT

This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date: 8/3/15

Thaddeus Cheyenne Murphy
Defendant

11

Date: 8/3/15

_____
Timothy O'Hara
Attorney for Defendant

Date: 8.3.2015

_____
Gregory A. Holloway, WSBA #28743
Assistant U.S. Attorney

12